IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAMMY R. JOHNSON and WILLIAM M. LONGAN,<br>    *Plaintiffs*,<br><br>v.<br><br>NVR, INC. d/b/a RYAN HOMES,<br>    *Defendant* | Case No. 23-cv-1280-ABA |

**MEMORANDUM OPINION**

In 2018, Plaintiffs Tammy Johnson and William Longan purchased a single-family home (the "Home") that had been newly constructed by Defendant NVR, Inc. t/a Ryan Homes ("NVR"). In 2022, they discovered water in their basement, and after drywall was removed, they discovered several vertical cracks in the foundation wall that appeared to have been found during the original construction, and that had been sealed (at least temporarily) at that time, before drywall had been installed. NVR then re-repaired the cracks, and Plaintiffs have not reported further issues. They sued NVR in May 2023. NVR has moved for summary judgment, based on a provision in the parties' Purchase Agreement that required that any claims arising out of or relating to Plaintiffs' purchase of the Home be filed within one year of the purchase. Because there exists a genuine dispute of material fact as to whether the contractual limitations period in the

agreement between the parties was procured by fraud, NVR's motion for summary judgment will be denied.

## BACKGROUND[1]

### A.    Purchase and Construction of Home

On February 24, 2018, Plaintiffs agreed to purchase the Home from NVR for $365,285, pursuant to a purchase agreement. ECF No. 24-1 at 5; ECF No. 24-2 at 3 (the "Purchase Agreement").[2] In addition to the "statutory implied warranty provided under Maryland law," NVR issued a limited contractual warranty, specifically that the "Home and driveway, walkways, steps, patios, porches, fences (if any) and decks (if any) supplied by Builder with the Home . . . will be free from defects in materials and workmanship of the original construction for a period of one (1) year from the Warranty Date." ECF No. 24-5 (Ryan Homes Homeowner's Manual) at 11 (¶ 3); Purchase Agreement at 4 (¶ 6). The Homeowner's Manual lists several specific items as falling under the one-year limited warranty, including foundation walls. ECF No. 24-5 at 4-8.[3]

The Purchase Agreement set a "one (1) year limitation of action period and bar date" for asserting "any claims under the limited warranty" or "any and all claims arising

---

[1] Because NVR has moved for summary judgment, the Court must view the evidence in the light most favorable to Plaintiffs, as the nonmoving parties, *Tolan v. Cotton*, 572 U.S. 650, 656-67 (2014), and draw all reasonable inferences in her favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The facts are set forth with this standard in mind.

[2] Citations to page numbers refer to the number appearing in the CM/ECF header for this and the other filings referenced herein, which may not align with a document's original page numbering.

[3] The Purchase Agreement also provided a 10-year warranty for "Major Structural Defects," ECF No. 24-5 at 11-12, where "Structural Defect" is defined in the Manual as "any defect in the load-bearing portions of a new home that adversely affects its load-bearing function to the extent that the home becomes or is in serious danger of

out of or relating to this agreement," and provided that such period would be measured from "the actual settlement date" (and that any claims based on matters occurring before settlement date were "deemed to have arisen and accrued . . . on the actual settlement date"). ECF No. 24-2 at 6 (§ 13).[4] The agreement also expressly provides that any "application of the so-called 'discovery rule' is mutually waived by the parties." *Id.* And by signing the Purchase Agreement, Plaintiffs "acknowledge[d] [their] understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects." *Id.*

Plaintiffs contend they also received a document entitled "Ryan Homes Homeowner's Guide" (the "Guide") as part of the purchase of the Home. ECF No. 3 ("Compl.") ¶ 8; ECF No. 24-6. The Guide sets forth information regarding the construction phase of the Home, including that NVR will initiate a "pre-construction meeting" and a "pre-drywall meeting." ECF No. 24-6 at 7. In particular, the

---

becoming unsafe, unsanitary, or otherwise uninhabitable." ECF No. 24-5 at 9. Plaintiffs do not contend that the 10-year warranty applies to their leak claims, instead solely invoking the 1-year warranty. *See* ECF No. 26 at 4.

[4] A separate provision defines the "Warranty Date" as "the first day that the original Purchaser occupies the new home, settles on the new home, makes the final contract payment on the new home, or obtains an occupancy permit for the new home if the home is built on the owner's property, whichever is earlier." ECF No. 24-5 at 10. Thus, there is some ambiguity about the precise date on which the 1-year warranty period and/or limitations period began. But any such ambiguity is immaterial here, because this case was filed in 2023, long after the 1-year period expired regardless of whether the period began on the settlement date, occupancy date or one of the other possible "Warranty Date[s]."

"Construction of Your Home" section of the Homeowner's Guide includes the following (hold in original; italics added):

> This section will provide you information regarding what to expect before and during the construction phase.
>
> - **Construction Schedule** - learn about the variables that impact the schedule of your home under construction.
>
> - **Construction Overview** - reminders to guide you through the selection process.
>
> - **Pre-Construction Meeting** - your Sales Representative will schedule a meeting for you to meet your Project Manager right before we start your home. The Project Manager will review options selected, discuss and set communication lines and expectations.
>
> - ***Pre-Drywall Meeting** - you will have an opportunity to meet with your Project Manager right before drywall goes up in your home, so we can demonstrate the craftsmanship "behind the walls".*
>
> - **New Home Orientation** - you will meet with your Project Manager right before you go to settlement to familiarize yourself with the features and benefits of your home, warranty information, and other aspects of your home.

*Id.* The Guide goes on to describe the Pre-Drywall Meeting as lasting approximately 45 minutes to an hour, and describes its "purposes" as to:

> - Tour the home together and demonstrate the quality "behind the walls" that Ryan Homes builds into every one of our homes prior to drywall installation
>
> - Confirm standard and selected options, including the location of your telephone and cable TV jacks, and any changes made per a Change Order Addendum (if

4

> applicable). No changes will be approved at this time or in the future.
>
> - Confirm any last minute details, which [sic] affect framing of finishing materials
>
> - Review the arrangements for completion of your home
>
> - Review any questions

*Id.* at 10.

The Guide, unlike the NVR Limited Warranty, is not incorporated into the Purchase Agreement by reference, and instead expressly disclaims that it constitutes or modifies any contract:

> This Guide is intended to be informative, helpful and user friendly, but it is not a legally binding document except for the warranty provisions. The Purchase Agreement and the various Addenda and Disclosures that you signed with Ryan Homes represent the contractual obligations from the Company to you and you to us. Nothing in this Guide (other than the warranty provisions) is intended to modify those contractual obligations.

ECF No. 24-6 at 5.

Plaintiffs recognize that the Homeowner's Guide "is not made a part of the Purchase Agreement," but contend it was "reasonable that the Plaintiffs relied upon the Defendant's own literature given to its customers that set forth the Defendant's own policies and procedures during a home build." ECF No. 26 at 6. Plaintiffs point out in particular that although the Guide envisions a "pre-drywall meeting"—the purpose of which NVR expressly describes as to "demonstrate the craftsmanship 'behind the walls'" before the drywall goes up, ECF No. 24-6 at 7—no such meeting occurred for their home. They contend that a reasonable factfinder could conclude that NVR not only

5

knew about the foundation cracks (which NVR does not deny, given that it found them during construction and then attempted to repair them), but also that NVR actively and intentionally sought to hide the cracks from Plaintiffs by never holding a "pre-drywall" meeting. They point out that NVR cancelled multiple "slab inspections" due to "water intrusion into the basement," including on July 6, 9, 30 and 31, 2018, ECF No. 26. at 7; *see also* ECF No. 26-1 at 5 (noting "fail[ed]" building footing and slab inspections on July 8 and 30, respectively, and a "partial pass" for a slab inspection on July 31); that Maria Bustamante noted on July 18, "Eric still waiting on foundation to get pumped out," ECF No. 26-2 at 6; on August 8, 2018, one of the contractors came to "[i]nstall membrane to prevent leakage and fill crack," ECF No. 26 at 7; on August 14, a contractor came to "inject wall cracks" and install seventeen "crack chaser tubes" and adhesive anchors, ECF No. 26-1 at 2; and additional "wall injection" was performed on August 28, *id.* at 1. Plaintiffs contend that while these issues were arising, NVR delayed "closing and settlement," purportedly to "conceal these material[] facts, issues, and deficiencies of the home to ensure the Plaintiffs effectuated said closing and settlement." ECF No. 26 at 7-8.

NVR eventually completed construction of the home, and NVR performed a "quality inspection" on the Home on October 4, 2018, and gave a "New Home Demonstration" to Plaintiffs on October 5, 2018. ECF No. 26 at 5. "Plaintiffs settled on their purchase of the Home on October 11, 2018," moving in shortly thereafter. ECF No. 24-10 at 3.

**B.    October 2022 Damage in Home and Subsequent Repairs**

On or around October 5, 2022, Plaintiffs noticed "four (4) to five (5) feet of the carpet and padding in the basement was completely soaked with water after a

rainstorm." Compl. ¶ 26; *see also* ECF No. 24-3 at 39-41. When Plaintiffs pulled up the carpet, they "immediately noticed the presence of mold and mildew." Compl. ¶¶ 26-27. After removing the drywall from the area closest to the water damage, Plaintiffs found that "the concrete load-bearing wall under the southeast of the garage concrete slab had several vertical cracks," along with "six (6) injection ports placed along the vertical cracks and what is believed to be epoxy sealer or other sealant applied in the vicinity of the vertical cracks." *Id.* ¶¶ 29-30; ECF No. 24-3 at 42-43. The largest crack in the foundation wall had been previously repaired by NVR during the original construction process. ECF 24-3 at 66:8-67:15, 72:3-72:6; ECF No. 24-4 at 50:13-52:20.

Plaintiffs reported the crack and water intrusion to NVR in October 2022; this was the first time they reported such issues. ECF 24-3 at 32:3-7; ECF No. 24-4 at 23:8-24:1. NVR then retained Ground Tek Engineering LLC ("Ground Tek") "to review and evaluate the alleged foundation wall crack and the prior repairs thereto and to make recommendations for any further repairs that were needed." ECF No. 24-1 at 12 (citing ECF No. 24-10 ¶ 6). As NVR puts it, "The engineer noted the crack had been repaired during original construction using an injection process, but that that repair (over time) proved ineffective." *Id.* at 3. NVR also retained Custom Coatings & Designs ("Custom Coatings") "to perform a urethane injection process to repair the crack pursuant to Ground Tek's recommendations." *Id.* at 13 (citing ECF No. 24-10 ¶ 7). After the cracks were repaired by Custom Coatings, NVR retained J. Reeley Painting and Drywall ("J. Reeley") and Interior Logic Group ("ILG") "to repair the adjacent building materials, *i.e.*, drywall, carpet, and paint." *Id.* (citing ECF No. 24-10 ¶ 8).

NVR did not charge Plaintiffs for any of the repairs performed. *Id.* (citing ECF No. 24-10 ¶ 9). Since the repairs, Plaintiffs have not reported any further issues with

7

water damage or foundation wall cracks. ECF No. 24-3 at 124:2-5; ECF No. 24-4 at 91:8-92:4.

## PROCEDURAL HISTORY

On April 17, 2023, Plaintiffs sued NVR in the Circuit Court for Baltimore County for breach of contract, breach of implied warranty, intentional misrepresentation, negligent misrepresentation, fraud, negligence, and violation of § 13-408 the Maryland Consumer Protection Act. *See* Compl. at 11-16. NVR filed an answer denying the allegations and asserting several affirmative and negative defenses. ECF No. 5 ("Answer") at 1-2. On May 15, 2023, NVR filed a timely notice of removal on the basis of diversity jurisdiction. ECF No. 1. Discovery was completed on April 5, 2024. ECF No. 23.

NVR filed a Motion for Summary Judgment. ECF No. 24; ECF No. 24-1 ("NVR Br."). Plaintiffs filed their opposition, ECF No. 26 ("Resp. Br."), and NVR replied, ECF No. 27 ("Reply Br."). The case was reassigned to the undersigned in September 2024. The Court held a motions hearing on April 10, 2025. ECF No. 31. The parties thereafter filed supplemental briefing. ECF Nos. 33 ("Pl. Supp. Br."), 34 ("NVR Supp. Br.").

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense," or part of a claim or defense, by showing "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry, in essence, is

whether there is a legitimate disagreement over a controlling issue that "may reasonably be resolved in favor of either party." *Id*. at 250.

In determining the propriety of summary judgment, the Court views the evidence in the light most favorable to the nonmoving parties (here, Plaintiffs) and draws all reasonable inferences in that party's favor. *Id*. at 255. The moving party (here, NVR) bears the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once this burden is satisfied, the opposing party cannot prevail without identifying specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). Neither "[u]nsupported speculation," *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987), nor evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, will suffice.

## DISCUSSION

NVR argues that because the Purchase Agreement contains a valid, enforceable, and unambiguous contractual limitation of action period of one year, all of Plaintiffs' claims are time-barred because they were filed four years after Plaintiffs moved into the Home. ECF No. 24-1 at 17. Plaintiffs argue that (1) the contractual limitations provision should be construed as an "exculpatory" clause, and should be held unenforceable as such; and (2) even if the provision constitutes a true limitations provision—not exculpating NVR but rather setting a 1-year deadline to sue—it should be held unenforceable (or at least summary judgment should be denied) because Plaintiffs were not properly informed by NVR of a material defect prior to closing on the Home. ECF No. 26 at 11. For the reasons explained below, the Court does not agree with NVR that

Plaintiffs' claims are time-barred, as a matter of law, under the contractual limitations clause of the Purchase Agreement.

### A.     The Contractual Limitations Period Provision Is Not An Exculpatory Clause.

A threshold question is whether the contractual limitations provision in the Purchase Agreement is an "exculpatory clause" that "shield[s] one of the parties from liability." *See Okorie v. Resident Research, LLC*, 617 F. Supp. 3d 320, 323 (D. Md. 2022); *see, e.g.*, ECF No. 26 at 11-14 (Plaintiffs arguing that the limitations provision should not be enforced because it constitutes an "exculpatory clause" that violates "the public interest").

Maryland law defines an "exculpatory clause" as a "contractual provision relieving a party from liability resulting from a negligent or wrongful act." *Okorie,* 617 F. Supp. 3d at 323; *BJ's Wholesale Club, Inc. v. Rosen*, 435 Md. 714, 724 (2013) ("By entering into an exculpatory agreement, the parties expressly . . . agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent.") (internal quotations and citation omitted). Maryland law does not consider contractual provisions that limit the time period in which a cause of action can be brought to be "exculpatory." *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md. App. 158, 169 (2000) ("None of the cases that have recognized the right to contractually modify a limitations period or the time for accrual of a cause of action . . . have referred to such provisions as exculpatory."); *U.S. Home Corp. v. Powers*, No. 09-2807-WMN, 2010 WL 1328380, at *7 n.6 (D. Md. Mar. 25, 2010) (citing *Morabito*, 132 Md. App. at 169) ("Under Maryland law, courts that have recognized the right to

10

contractually modify the limitations period for a cause of action have not characterized this modification as 'exculpatory.'"). Plaintiffs cite solely to cases discussing provisions that contractually waive or bar particular categories of claims, rather than limiting the time period in which a lawsuit can be filed. *See generally* ECF No. 26 at 13-14.

Therefore, the contractual limitations period provision is not an exculpatory clause under Maryland law and instead must be analyzed under Maryland law applicable to contractual limitations periods.

**B.      Genuine Disputes of Material Fact Exist As To Whether The Contractual Limitations Provision is Valid and Enforceable**

The Purchase Agreement here does three things in setting a deadline for suing NVR related to Plaintiffs' home. First, it sets as one year the time *period* within which claims, such as claims asserting violations of the 1-year limited warranty, must be filed. ECF No. 24-2 at 6. Second, it defines when that period *begins* (or "accrues" in the technical parlance), namely the parties' "settlement date," which here undisputedly was October 11, 2018. ECF No. 24-9 at 2. Third, in stipulating that the 1-year period begins at settlement, the parties expressly abrogated the so-called "discovery rule" insofar as it would otherwise apply. ECF No. 24-2 at 6. In other words, although ordinarily under Maryland law the discovery rule "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence," *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (Md. Ct. App. 2011) (citation omitted), here the parties stipulated that "all application of the so-called 'discovery rule' is mutually waived by the parties." ECF No. 24-2 at 6.

11

Plaintiffs contend that the Court should deem these contractual provisions to be unenforceable—including the waiver of the discovery rule—because NVR "was aware of cracks to the home's foundation at the time of construction," attempted to fix the cracks "prior to the sale and transfer of the home," and yet "did not advise the Plaintiffs of the cracks or attempted repair prior to settlement of the home, which ultimately leaked water again in October of 2022." ECF No. 26 at 3. They contend that if they had known about the cracks, they "would not have proceeded with the purchase of the Property," *id*. at 9, or would have demanded "a reduction in [the] sales price." *Id*. at 5. They contend the contractual limitations provisions are "unconscionable." *Id*. at 4.

Under Maryland law, a contractual limitations provision, or a provision abrogating the discovery rule, is enforceable so long as (1) there is no controlling statute to the contrary, (2) the provision is reasonable, and (3) the provision is not the product of fraud, duress, or misrepresentation. *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 693-94 (2017); *Morabito,* 132 Md. App. at 174; *Daniels v. NVR, Inc.*, 56 F. Supp. 3d 737, 742 (D. Md. 2014); *Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147, 150-51 (4th Cir. 1999) (concluding that a contractually established accrual date for legal claims was consistent with Maryland law).

There is no dispute that any issues arising in the construction of the Home arose prior to Plaintiffs settling on the home purchase in October 2018, and that there were issues with the home's foundation prior to the sale and transfer of the home. ECF No. 26 at 3, 6 ("Plaintiffs do not take issue with Defendant's statement of facts section . . . ."). Therefore, given that Plaintiffs' claims have certainly been brought after the one-year limitations period set forth in the Purchase Agreement and NVR Limited Warranty, the remaining question is whether any of the above exceptions apply that would render the

12

provisions unenforceable to the present case, or could lead a reasonable jury to find facts that would bring this case within one of the exceptions.

First, there is no controlling statute precluding parties in real estate contracts from contractually limiting the period in which a claim can be brought. *See Ceccone*, 454 Md. at 696 ("In this case, no statute has been cited to us . . . that [ ] would categorically bar a home services maintenance agreement from including a provision that shortens the period of limitations. Nor are we aware of one."). In contrast, the Maryland General Assembly *has* enacted a controlling statute in the context of insurance and surety contracts deeming "shortened periods of limitation to be against public policy and unlawful." *Morabito*, 132 Md. App. at 172 (citing Md. Code An., Ins. § 12-104 (West 1997)). No such statute exists or has been identified by Plaintiffs for commercial, real estate, or construction contracts.

Second, Plaintiffs have not demonstrated how a one-year limitations period is unreasonable. The language of the contractual limitations clause, which Plaintiffs agreed to, expressly states that a "one (1) year period is *completely reasonable in all respects* . . . ." ECF No. 24-2 (Purchase Agreement) at 6 (emphasis added). In *Ceccone*, the Supreme Court of Maryland held that "[a]mong the factors to be considered in assessing reasonableness are the subject matter of the contract, the duration of the shortened limitations period compared to the period that would otherwise govern, the relative bargaining power of the parties to the contract, and whether the shortened limitations period is a one-sided provision that applies to one party but not the other." 454 Md. at 694-95. While there is no direct Maryland appellate case law on point analyzing a one-year period, NVR cites to a slip copy of a decision by a Maryland trial court analyzing a substantially identical provision and holding that the one-year limitations period in the

13

homebuyer's contract was reasonable. *Shepard v. NVR, Inc.*, No. 10-C-10-2716, slip op. at 6 (Frederick Cnty. Cir. Ct. Oct. 28, 2011) (citing *Morabito*, 132 Md. App. at 172). The Fourth Circuit has similarly held a one-year limitations period to be reasonable in a variety of contexts. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 287 (4th Cir. 2007) (collecting cases) ("Courts have frequently found contractual limitations periods of one year (or less) to be reasonable."). Plaintiffs have not identified any case law suggesting otherwise, and finding no authority to the contrary, this Court agrees with NVR that the one-year contractual limitations period in the Purchase Agreement is reasonable.

But that leaves the question of whether the contractual limitations provision, including waiver of the discovery rule, is "the product of fraud, duress, or misrepresentation, or the like." *Ceccone*, 454 Md. at 485. Under Maryland law, a claim of fraudulent concealment requires Plaintiffs to show that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Blondell v. Littlepage*, 413 Md. 96, 119 (Md. Ct. App. 2010) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 138 (2007)).

NVR argues that, for that exception to apply, Plaintiffs would have to prove that NVR engaged in fraud or misrepresentation directly related to the contractual limitation provision itself. ECF No. 34 at 1-3 (citing *Ceccone* and *Shepard*); *see also Shepard*, slip op. at 6 ("Plaintiff also fails to satisfy the third factor in *Morabito* because, although she asserts misrepresentation claims, she does not allege that the Contractual Limitations Clause itself is subject to defenses such as fraud, misrepresentation, or duress").

14

Plaintiffs, on the other hand, contend that if they had known "the existence of the crack in the load bearing wall, and in a finished basement," they would not have "close[d] on the property"—or at least would not have done so while waiving the discovery rule. ECF No. 33 at 3.

The Court agrees with Plaintiffs that the standard is not as narrow as NVR presents it to be. In *Ceccone*, for example, while the Supreme Court of Maryland frames a contractual limitations provision to be valid and enforceable so long as "the provision is not the product of fraud," 454 Md. at 698, there the court remanded the case to the trial court because plaintiff alleged that the defendant "made misrepresentations that they felt were material and that amounted to fraud." *Id.* at 696. The standard is not whether NVR made a fraudulent misrepresentation or concealment *specifically about the provision itself*; such a standard would be overly stringent and impossible to apply outside the most egregious of circumstances. Nor is the standard that, whenever a plaintiff assert a fraud claim, any contractual limitations period does not apply; rather, there must be some nexus between the alleged fraud and the contractual limitations provision.

Here, the record reflects that, as Plaintiffs' home was under construction, not only did one of the foundation walls develop cracks that leaked repeatedly, but NVR took several attempts to repair the foundation to prevent water from intruding through the cracks. ECF No. 26-1 at 1-7. The fact that the foundation cracked and was leaking would not itself establish that NVR fraudulently concealed the leaks from Plaintiffs, but other evidence in the record—at least when viewed in the light most favorable to Plaintiffs—provides sufficient evidence that a reasonable jury could find facts that would render Plaintiffs' waiver of the discovery rule unenforceable. For example, the record

15

reflects that a scheduled inspection of the foundation was repeatedly rescheduled while NVR attempted to repair the leaks, during which NVR never explained the issues to Plaintiffs. *Id.* at 4, 7. Of particular relevance is evidence that NVR ordinarily holds a "pre-drywall meeting," and that NVR not only informs potential home purchasers about the availability of such meetings in its Homeowner's Guide, but emphasizes that the purpose of the pre-drywall meeting is to "meet with your Project Manager right before drywall goes up in your home, so we can demonstrate the craftsmanship 'behind the walls,'" ECF No. 24-6 at 7, *i.e.*, to "[t]our the home together and demonstrate the quality 'behind the walls' that Ryan Homes builds into every one of our homes prior to drywall installation," *id.* at 10. The record shows that NVR never held a pre-drywall meeting with Plaintiffs, a fact that NVR does not dispute. ECF No. 24-1 at 14 (citing Compl. ¶¶ 15-20, 22, 26-37). A reasonable jury could find that, if NVR had followed the Homeowner's Guide and held a pre-drywall meeting, Plaintiffs may have chosen not to close on the home, or at least would not have agreed to move forward with the transaction while simultaneously waiving the discovery rule (at least with respect to foundation leak issues). NVR points out, correctly, that the Homeowner's Guide is not part of the parties' contract. ECF No. 24-1 at 11 (¶ 18). But that is beside the point; the fact that such a meeting was supposed to occur, but did not occur in this circumstance, does not itself give rise to an independent claim for breach of contract, but is evidence (along with the other evidence) from which a reasonable jury could find facts that would render the contractual limitations clause unenforceable.[5]

---

[5] NVR also argued at the hearing that the purchase agreement containing the contractual limitations period provision was executed before the concealment of the defect, and therefore—as a matter of chronology—the contractual limitations provision

Therefore, there remains a genuine dispute of material fact as to whether the contractual limitations period provision in the Purchase Agreement is valid and enforceable under Maryland law.[6]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be denied. A separate order follows.

Date: June 10, 2025                         /s/
                                         Adam B. Abelson
                                         United States District Judge

---

itself cannot have been the product of fraud. But a condition precedent to Plaintiffs' obligation to go forward with the purchase was their final approval to close on the house *after* construction. And a reasonable jury could find that NVR intentionally concealed the defect and Plaintiffs would not have moved forward with closing—including the waiver of the discovery rule—if the defect had not been concealed.

[6] This is not to say that a jury will decide whether the contractual limitations clause is enforceable; that is a question of law. But the underlying disputes of fact, such as whether NVR fraudulently concealed the foundation leak, and whether Plaintiffs would have walked away from the transaction if they had known about the leaks, are questions of fact that would require resolution by a factfinder (here, a jury, in light of Plaintiffs' jury demand, ECF No. 3 at 17).